ALBERT SMITH, *in Equity, versus* ANDERSON PARKER *& als.*

A conveyance in trust, either secret or expressed, of real estate, made or procured to be made by one largely indebted and insolvent, for the purpose of defrauding creditors, is void both as to existing and subsequent creditors.

A. mortgages his real estate to the assignor of B., and allows the mortgage to be foreclosed by B., with the understanding that he shall be allowed to redeem notwithstanding the foreclosure. A. then, with the design of defrauding his creditors, procures B. to convey to C., in trust for A's wife and children, and, in certain contingencies, for his own benefit; — *Held,* that the transaction was void as to creditors.

The amount of the mortgage, or other sum, having been paid by A., (grantor and debtor,) to B., for the conveyance as aforesaid, the title to the premises will, "in equity," for the purpose of protecting the rights of the creditor whom there was an attempt to defraud, be held to be in A. and not where the form of the conveyance would seem to place it.

BILL IN EQUITY. The facts are fully stated in the opinion of the Court. The case was heard upon demurrer, pleaded by the trustee and *cestui que trust;* the remaining party having put in his answer.

*Hillard & Flagg,* for defendants.

1. If the plaintiff is not entitled, on his own showing, to relief, he is not entitled to a discovery. *Coombs* v. *Warren,* 17 Maine, 337.

2. If, for any reason founded on the substance of the case, as stated in the bill, the plaintiff is not entitled to the relief he prays for, he may demur. Story's Eq. Pl. c. 10, § 526.

3. The case does not show any indebtedness of Thomas, between the time of giving the mortgage and its foreclosure.

4. The original trustee is not charged in the bill as connusant of the alleged fraud of Frederic Thomas, nor can it be believed that his successor, who knew nothing about the original transaction, could be a party to such fraud. Nor does the bill, except by implication, connect the wife with the alleged fraudulent attempt of the husband. Fraud cannot be imputed where no design to deceive is manifest. *Denny* v. *Gilman,* 26 Maine, 149.

5. It is not fraud upon the attaching creditor, if the assignee of the debtor make an agreement with the mortgagee, that

the latter shall hold the mortgage until the time for redemption has expired, and then convey the land to the assignee on being paid by him the amount secured by the mortgage. *Danforth* v. *Roberts & als.*, 20 Maine, 307.

6. The remedy at law is adequate and ample. Defendants rely upon the deed of trust. If impeached as fraudulent, a jury at common law should try the question.

*Rowe & Bartlett*, for plaintiff.

The bill sets out a case of post-nuptial settlement, and alleges, in substance, that it was voluntary and made with fraudulent intent, the husband being insolvent at the time. Plaintiff is a subsequent creditor.

Whether such a settlement is to be impeached by a subsequent creditor, on the ground of its being voluntary alone, has been a good deal mooted in England and in this country, but no doubt has ever been raised as to its being void, where it was also fraudulent. *Sexton* v. *Wheaton*, 8 Wheat. 229; 5 Cur. 396.

" To avoid a post-nuptial settlement, insolvency need not be proved."

" A merchant largely indebted, and whose means of payment were subject to many contingencies, was not in a condition to make such a settlement of a large landed estate, and it is voidable by his creditors." *Parish & al.* v. *Murphree & al.* 13 How. 92; 19 Cur. 407.

" If the facts show clearly a fraudulent intent, the conveyance is void against all creditors, past or future." 13 How. 99; 19 Cur. 409.

" All transfers of property, made with an intention to defraud creditors, are void, as it respects creditors, whether then existing or becoming such subsequently." *Pullen* v. *Hutchinson*, 25 Maine, 249 to 254; *Clark* v. *French*, 23 Maine, 221.

MAY, J. — This case now comes before us upon demurrer to the bill by two of the defendants, the other defendant having put in an answer; and it is conceded by the counsel for the plaintiff, that the bill can be maintained only on the

ground of fraud on the part of Frederic J. Thomas, the husband of Mary Thomas, in the conveyance which was made by John Bradbury to Nathaniel J. Thomas, on the fourth day of August, 1846, in trust for the sole use and benefit of said Mary during her life; and then to be conveyed, and the proceeds thereof, in such manner and to such persons as the said Mary, in her last will and testament, should order and appoint; and in want of such disposition by said Mary in her life time, then to be held in trust for her child or children, and the lineal descendants of any such child, living at the time of her decease; and in case of failure of any such child or lineal descendants, *then to the use of said Frederic J. Thomas, if living, and if he shall not survive the said Mary, then to his heirs at law.* The said Frederic, on the fourth of Nov., 1841, mortgaged the same premises to Seth W. Merrill, to secure the payment of three notes amounting to $900, the last of which fell due Sept. 2, 1843, and the said Merrill, on Nov. 2, 1842, duly assigned said mortgage to the said Bradbury, in whose hands it became legally foreclosed sometime in March, 1846. The said Nathaniel J. Thomas having deceased, Anderson Parker, one of the defendants, was duly appointed trustee under said deed, and accepted the trust.

The bill charges, in substance, that said Frederic J. Thomas, at the time of said conveyance from said Bradbury to Nathaniel J. Thomas, *was largely indebted and insolvent,* and that he, *with the fraudulent intent and design to defraud and injure his creditors,* suffered the said mortgage to be foreclosed, *with the understanding and agreement between him and the said Bradbury,* that he should be allowed to redeem said lands notwithstanding such foreclosure; and that afterwards, on or before August 4, 1846, he paid the amount due upon said mortgage to said Bradbury and redeemed the same, and procured the conveyance thereof to be made to said Nathaniel J. Thomas, in trust as aforesaid; and if this is not so, that the said Frederic, after the right of redemption had been suffered to expire as aforesaid, and, on or before the said fourth day of August, 1846, purchased the said lands of said Bradbury,

paying him out of his funds about $900 therefor; and, *with the fraudulent intent and design aforesaid,* procured the same to be conveyed in manner and in trust for the purposes aforesaid. And the plaintiff further complains, that the said Frederic, being indebted to him, he obtained judgment and execution against him, the said Frederic, in Dec. 1849, for the sum of $293,29 and $33,69 costs of suit, which execution he caused to be duly levied upon a part of the premises so conveyed in trust as aforesaid; and further, that the said premises are still, as they have been from before the conveyance from said Bradbury to Nathaniel J. Thomas, *the home and residence of said Frederic, his wife and family;* and that he ought to be put into the possession and enjoyment of so much of said premises as has been set off to him; and further, that he has been manifestly wronged and injured by the aforesaid proceedings, wherefore he prays for such discovery and relief as his case may properly require.

The question presented is, whether the foregoing facts alleged in the bill, and admitted by the demurrers, show such a case of fraud in the said conveyance from Bradbury to Nathaniel J. Thomas, as to render it void as against the plaintiff, who claims only as a subsequent creditor.

It was held in the case of *Reade* v. *Livingston,* 3 Johns. Ch. 481, that voluntary settlements after marriage, upon the wife or children, and without any valid agreement previous to the marriage to support them, were void as against creditors existing when the settlement was made. But if the person be not indebted at the time, then it is settled that the post-nuptial voluntary settlement upon the wife or children, *if made without any fraudulent intent,* is valid as against subsequent creditors. "This doctrine," says Chancellor Kent, in his Comm. vol. 2, p. 173, "was not only deduced from the English authorities, but it has since received the sanction of the Supreme Court of the United States, in the case of *Sexton* v. *Wheaton,* 8 Wheat. 229." The same is held in *Picquet* v. *Swan,* 4 Mason, 443. If, however, such voluntary settlement or conveyance be made *with a fraudulent intent and design as*

*to creditors,* it cannot be upheld even as against such as are subsequent. If such conveyance " is intentionally made to defraud creditors, it seems perfectly reasonable, that it should be held void as to all subsequent, as well as to all prior creditors." 1 Story's Eq. 352. It is true, the trust in the present case, is not a secret trust, but is apparent upon the face of the deed, and in certain contingencies, is for the benefit of Frederic J. Thomas, the husband of the *cestui que trust,* he having advanced the whole purchase money which was paid for the conveyance, and having occupied the premises with his wife and family, since it was made as well as before.

Had this deed been made without any trust expressed upon its face, still there would have been a resulting trust in favor of Frederic J. Thomas, which, if made to defraud creditors, it cannot be doubted, would be void as to subsequent creditors as well as to those existing at the time. No sufficient reason is perceived why the expression of a trust upon the face of a voluntary conveyance should change the rule.

By the 5th c. of the statute of Eliz. " every feoffment, gift, grant, alienation, bargain and conveyance of lands, tenements and hereditaments, goods and chattels, or any of them," by *writing* or otherwise, " that had been or afterwards should be" had or made to or for any intent or purpose, " to delay, hinder or defraud creditors, or *others,* of their just and lawful actions, suits, debts, accounts," &c., is declared to be " clearly and utterly void, frustrate and of no effect; any pretence, color, feigned consideration, *expressing of use,* or any other matter or thing to the contrary notwithstanding." Under this statute, voluntary conveyances, made without consideration by persons who are insolvent, may on that very account be deemed fraudulent, even as against subsequent creditors, and when made, by persons whether insolvent or not, for the purpose of defrauding such creditors, are to be declared void as against them. *Howe* v. *Ward,* 4 Maine, 195.

In Newland on Contracts, 389, it is said "the deeds which are avoided by the statute of the 13th of Elizabeth are void as well against those creditors whose debts were contracted

subsequently to such deeds as against those whose debts were in existence at the execution of the deeds." And in a note in Story's Eq. 353, he says "where a settlement is set aside, as an intentional fraud upon creditors, there is strong reason for holding it so as to subsequent creditors." The same doctrine is held in *Taylor* v. *Jones*, 2 Atk. 600. So also this Court, in an elaborate opinion drawn by WHITMAN, C. J., in view of said authorities and others, came to the same conclusion. *Clark* v. *French*, 23 Maine, 221. Whether this rule has been changed in this State, by the statute of 1847, c. 27, § § 1 and 2, it is unnecessary now to inquire, because the conveyance in question was made prior to the passage of that Act. The bill directly alleging fraud in the procurement of the conveyance from Bradbury to said Nathaniel J. Thomas, and such fraudulent intent as to creditors being admitted by the demurrers, we are brought to the conclusion that said conveyance must be regarded void as against the present plaintiff.

The case shows that Frederic J. Thomas, *with the fraudulent design aforesaid,* long after the condition in the mortgage, then held by Bradbury, had been broken, and after the right of redemption had become foreclosed in conformity with the forms of law, either paid off said mortgage and redeemed said premises, with the consent and agreement of said Bradbury, so that he became entitled thereby to a release from said Bradbury of the legal estate which remained in him, after receiving such payment; or having no right of redemption in the premises, *he purchased them and paid for them out of his own funds, and with the view and purpose of defrauding his creditors,* procured the said conveyance thereof to be made from said Bradbury to said Nathaniel J. Thomas. In either case, after the payment of said mortgage, or the purchase money, the said premises became equitably the property of said Frederic J. Thomas; and such transaction, we apprehend, notwithstanding the conveyance in trust as aforesaid, "will, for the purpose of protecting the creditor who was attempted to be defrauded, place the title" in equity, where, according to the

*real intention* of the parties, it was to be beneficially fixed, and not where the mere forms "and *apparent* trust, adopted for so iniquitous a purpose, would seem to place it;" and this, notwithstanding there may have been no intentional fraud in the trustee or *cestui que trust*, named in the deed, who took, at best, from an insolvent person, through a mere voluntary conveyance, made without consideration. In support of these views, we refer to the reasoning of the Court in *Goodwin* v. *Hubbard & al.* 15 Mass. 210.

On the whole, we think that, under such circumstances, rights could only be acquired subject to be defeated by the creditors of Frederic J. Thomas, by reason of the fraud on his part, whether such creditors were existing at the time or subsequently; and that the plaintiff, upon the facts stated in his bill, is entitled to a release of the land set off on his execution, and the demurrers filed by the defendants must be overruled.

TENNEY, C. J., and HATHAWAY, and GOODENOW, J. J., concurred. APPLETON, J., did not sit.